# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEVI FOERDERER, #10312-059, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-429-SMY |
| | ) |
| T. MATHIAS, | ) |
| J. GOODRICH, | ) |
| R. ROBINSON, | ) |
| JOHN DOE 1, and | ) |
| JOHN DOE 2, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Levi Foerderer, an inmate who is currently incarcerated at the Federal Correctional Complex in Coleman, Florida, brings this *pro se* action pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) ("*Bivens*"). In his Complaint, Plaintiff claims that during his time at FCI Greenville ("Greenville"), the defendants failed to protect him from other inmates in violation of the Eighth Amendment, leading to his sustaining injuries and being exposed to an increased risk of violence from inmates who became aware that Plaintiff previously acted as a government witness. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

1

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow part of this action to proceed past the threshold stage.

### **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations: Case Manager Mathias allowed a known violent inmate, Michael Perkins, to be placed in Plaintiff's cell even after Plaintiff told her of his prior history of being assaulted for being a government witness and about a court's finding that he needs extra protection due to his previous cooperation with the government. (Doc. 1, p. 5). Mathias knew of Perkins' history of violence because her position requires her to closely review all inmate central files of inmates on her caseload. *Id.* In their conversation, Plaintiff specifically requested to be moved to a low security institution because his points were low and "other inmates had been assaulted for being cooperating witnesses and due to [his] prior history of being assaulted, [Plaintiff] felt especially vulnerable to attacks." (Doc. 1, p. 12). In response to Plaintiff mentioning the court finding that he needed protection,

2

Mathias "laughed and said she did not have to follow court findings and that [Plaintiff] would be fine." *Id.*

Counselor Goodrich placed Perkins, a known violent inmate, in Plaintiff's cell even after Plaintiff expressed deep concern over potential attacks due to his having been a government witness and pleaded with Goodrich not to place any violent inmates with him. (Doc. 1, p. 5). Goodrich knew of Perkins' history of violence because his position requires him to review the files of all inmates on his caseload. *Id.* Goodrich also knew that a court determined that Plaintiff needed to be protected, but ignored the court's finding when he placed Perkins in Plaintiff's cell. *Id.* In his conversation with Goodrich, Plaintiff expressed concern about someone finding out that he had testified in court because other inmates were asking for paperwork. (Doc. 1, p. 13). Goodrich asked Plaintiff if anyone had asked him, and Plaintiff replied not yet. *Id.* Goodrich told Plaintiff not to worry until someone asked him. *Id.* Plaintiff asked Goodrich to recommend that he be transferred to a "low," but Goodrich said Plaintiff would have to speak to Mathias. *Id.*

That week, Goodrich informed Plaintiff that he would be getting a new cellmate. *Id.* Plaintiff told him not to place anyone with him who would give him problems. *Id.* That afternoon, Michael Perkins was placed in Plaintiff's cell. *Id.* On August 19, 2016, Perkins entered the cell at approximately 9:00pm. *Id.* He had an email stating that Plaintiff had cooperated with authorities and that he was working for the U.S. Marshals under a different name. *Id.* Perkins told Plaintiff that he had until noon the following day to find somewhere else to live if he did not want to get "smashed." (Doc. 1, pp. 13-14). Plaintiff told him there were not open cells, but Perkins did not revise his ultimatum. (Doc. 1, p. 14).

The next morning, Perkins awoke to a noise Plaintiff made and looked at Plaintiff angrily. *Id.* Plaintiff told him that he needed to find somewhere else to live if he did not like

Plaintiff because he was not going to move out of his cell. *Id.* Perkins cursed at Plaintiff and advanced toward him aggressively, with his fists balled up. *Id.* Plaintiff ducked his advance and Perkins tripped on Plaintiff's leg. *Id.* Perkins fell and hit his head on a desk. *Id.* Perkins told Plaintiff that he was a "dead rat" and lunged toward him. *Id.* Plaintiff feared for his life, particularly due to Perkins' large size (6 feet, 4 inches tall and 350 pounds). *Id.* Plaintiff defended himself by striking Perkins in the back and side of his head as he grabbed Plaintiff's legs and attempted to pick him up. (Doc. 1, p. 15). Plaintiff then pushed Perkins out of the cell, and Perkins left. *Id.* During the confrontation, Plaintiff broke his hand while striking Perkins. *Id.* This injury caused Plaintiff a great deal of pain. *Id.*

Plaintiff left his cell and when he returned, Perkins and another inmate were digging through Plaintiff's personal things. *Id.* Plaintiff asked them to stop, at which point three officers approached the cell and detained both Plaintiff and Perkins. *Id.* Plaintiff was taken to the Special Housing Unit ("SHU"), where SIS Technician Serio attempted to question Plaintiff about what had occurred within earshot of other SHU inmates. *Id.* Plaintiff responded that he could not tell him there because other inmates would be able to hear what was said. (Doc. 1, p. 16). Plaintiff was moved to a cell occupied by Jason Foerster, a member of Latin Folk street gang, who was in the SHU for assaulting another inmate. *Id.* His gang has an assault-on-sight policy for cooperating witnesses. *Id.* Foerster was aware that Plaintiff had cooperated with the government because Perkins put Plaintiff's name and case number in numerous places in the SHU law library. *Id.* Another inmate in the SHU informed Plaintiff that Perkins had stolen the addresses for his 7-year-old daughter, her mother and Plaintiff's sister and had handed them out to other SHU inmates, instructing them to write them obscene letters because they were "strippers." *Id.* Plaintiff asserts that he never should have been placed with Perkins because he

4

is low security and Perkins is high security. (Doc. 1, p. 17).

John Doe 1, a member of the mailroom staff at Greenville, allowed an article about Plaintiff's cooperation with the government and his being beaten as a result of his testimony into the institution through the mail. (Doc. 1, p. 6). In the article was a picture of Plaintiff, with a bruised and swollen face from his having been beaten. *Id.* John Doe should have known about the article because "program statement policy 5800.10 requires mandatory opening and inspecting of all mail and packages for contraband," and he also had the common knowledge that "cooperating witnesses face serious harm and death in prison." *Id.*

Unit Manager Robinson allowed Goodrich and Mathias to place a violent inmate in Plaintiff's cell even after he expressed his deep concern for his life and safety to her. *Id.* Robinson was in a position that required her to oversee the decisions of Mathias and Goodrich. *Id.* Despite this, she told Plaintiff that he needed to speak to Goodrich, his counselor or his case manager about his fears of being attacked and the court order stating that Plaintiff needed protection. (Doc. 1, p. 12). Robinson told Plaintiff that addressing his concerns on these issues was "not her job" and that she did not "want to hear it." *Id.*

John Doe 2, a DSCC administrator, transferred Plaintiff to a USP with medium points after Greenville's warden requested he be sent to one. (Doc. 1, p. 7). Plaintiff had expressed his fear of attack to John Doe 2 and sent him copies of his "J&C," which stated: "The defendant has been the subject to acts of violence and needs to be protected. There should be particular attention paid to protecting his safety." *Id.*

Plaintiff seeks declaratory, monetary and permanent injunctive relief. (Doc. 1, pp. 8-11).

## Discussion

The Court begins its § 1915A review with a note about the parties in this case. Throughout his Complaint, Plaintiff refers to the conduct of some individuals not named in the caption or defendant list. For example, he states that he spoke with Patterson and Lloyd about his situation, and that Serio failed to question Plaintiff about the attack by Perkins in a private setting and instead placed him in danger in a cell with Foerster. Because these individuals are not listed in Plaintiff's caption by name, they will not be treated as defendants in this case and any claims against them should be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption").

Turning to the allegations in Plaintiff's Complaint, the Court finds it convenient to divide the *pro se* action into the following enumerated counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Mathias, Goodrich and Robinson failed to protect Plaintiff from violence at the hands of inmate Perkins in violation of the Eighth Amendment.
>
> **Count 2 –** John Doe 1 failed to protect Plaintiff from potential violence at the hands of fellow inmates in violation of the Eighth Amendment by allowing correspondence identifying Plaintiff as a government witness into Greenville through the mail.
>
> **Count 3 –** John Doe 2 failed to protect Plaintiff from potential violence at the hands of fellow inmates in violation of the Eighth Amendment when he transferred Plaintiff to a USP with medium points.
>
> **Count 4 –** Defendants' failure to protect Plaintiff from Perkins and potential violence at the hands of other inmates constituted negligence under Illinois law.

As discussed in more detail below, Count 1 will be allowed to proceed in this action and the remaining claims will be dismissed for failure to state a claim upon which relief may be granted. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

## Count 1 – Failure to Protect against Mathias, Goodrich and Robinson

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834.

In order for Plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. Plaintiff also must prove that prison officials were aware of a specific, impending and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, the defendants had to know that there was a substantial risk that the person who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

Plaintiff has sufficiently stated a failure to protect claim against Mathias, Goodrich and Robinson, at least at this stage. These defendants allegedly knew that he had acted as a government witness and had been attacked before because of it. Nevertheless, these defendants allegedly failed to prevent a known violent inmate from being placed in Plaintiff's cell, and when Perkins was placed there despite Plaintiff's objections, Plaintiff was attacked and suffered injuries that allegedly could have been prevented. Count 1 will therefore be allowed to proceed.

## Count 2 – Failure to Screen Mail

Under the standard articulated in *Farmer*, Plaintiff has failed to state a cognizable failure to protect claim against John Doe 1 based on his alleged failure to prevent an article about Plaintiff being a government witness from entering the prison through the mail. To be sure, the intentional identification of an inmate as a government witness or "snitch" may give rise to a failure to protect claim under the Eighth Amendment, *see Brown v. Narvais*, 265 F. App'x 734, 736 (10th Cir. 2008) ("allegations of a prison officer's deliberate disclosure of dangerous information about an inmate's status are sufficient to state a claim under the Eighth Amendment provided the alleged danger is facially concrete and plausible enough to satisfy basic pleading standards."), as can a prison official's intentional heightening of the risk of future injury to a prisoner, even if a prisoner is not ultimately injured. *See Wright v. Miller*, 561 F. App'x 551, 555 (7th Cir. 2014) (citing *Budd v. Motley,* 711 F.3d 840, 843 (7th Cir. 2013); *see also Thomas v. Illinois,* 697 F.3d 612, 614–16 (7th Cir. 2012) (explaining that "hazard, or probabilistic harm" could allow recovery); *Irving v. Dormire,* 519 F.3d 441, 449 (8th Cir. 2008) (concluding that guard's alleged attempts to induce other inmates to assault plaintiff prisoner "posed a substantial risk of serious harm to [the prisoner's] future health")).

This case, however, is distinct from those in which prison officials intentionally identify a prisoner as an informant because there is no allegation, nor apparent probability, that the actions taken or not taken by John Doe 1 were intentional or done with an awareness of Plaintiff's situation. Plaintiff does not allege that he informed John Doe 1 of his situation or that he otherwise was aware of it, which is necessary to establish deliberate indifference. *Grieveson v. Anderson*, 538 F.3d 763, 775-76 (7th Cir. 2008) (prisoner did not mention to guards that he was perceived to be a "snitch" or otherwise apprise them of a specific threat to his life, and "the inquiry is not whether [defendants] *should have* known about risks to [an inmates] safety, but

rather whether they *did* know of such risks").

Furthermore, prison officials may inspect mail to ensure that it does not contain contraband, as Plaintiff alleges is the policy at Greenville. *Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005) (citing *Wolff v. McDonnell,* 418 U.S. 539, 576 (1974)). That said, a failure to perfectly and flawlessly follow a prison policy does not give rise to an Eighth Amendment claim, and a prison official's accidental or inadvertent failure to protect inmates from harm by other prisoners is not sufficient to state an Eighth Amendment violation. *Farmer*, 511 U .S. at 840. Because Plaintiff merely alleges that John Doe 1 failed to prevent a single piece of mail with information about Plaintiff from entering the institution, without further indication that John Doe 1 was aware that Plaintiff was a government witness facing serious potential harm, or was more than merely negligent in failing to identify the piece of mail when it came in, Count 2 fails to state a claim upon which relief may be granted and will be dismissed without prejudice.

## Count 3 – Prison Transfer

The United States Supreme Court has long recognized that the Constitution does not guarantee placement in any particular prison. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976). This is because "prisoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). Here, Plaintiff is not just complaining about his transfer to a different prison, however. Rather, he challenges his transfer to a USP with medium, as opposed to low points. He brings this as a failure to protect claim under the Eighth Amendment.

The complaint allegations do not suggest that John Doe 2 acted with deliberate

indifference in conjunction with Plaintiff's transfer.  Plaintiff does not allege or suggest that John Doe 2 had any knowledge that a USP with medium points would pose any specific risk of harm to Plaintiff, much less a serious harm.  In fact, Plaintiff was transferred from Greenville USP, which is a medium security federal correctional institution[1] where there allegedly are inmates who are aware that Plaintiff was a government witness.  Logic dictates that a different medium security prison would be safer than Greenville for Plaintiff, not more dangerous.  For the foregoing reasons, Plaintiff's transfer did not violate his constitutional rights, and Count 3 will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### **Count 4 – Negligence under Illinois Law**

A federal prisoner who seeks relief for the misconduct of federal agents has three options for obtaining relief in federal court.  He may bring a suit against the United States under the Federal Tort Claims Act ("FTCA") for misconduct of federal agents that is considered tortious under state law.  *Sisk v. United States*, 756 F.2d 497, 500 n.4 (7th Cir. 1985) (citing 28 U.S.C. §§ 1346(6), 2680).  He may bring a suit against the agent for a violation of his constitutional rights under the theory set forth in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  *Id.*  Or, he may bring both types of claims in the same suit.  *See, e.g.*, *Ting v. United States*, 927 F.2d 1504, 1513 n. 10 (9th Cir. 1991).   Plaintiff's Amended Complaint raises constitutional claims under *Bivens* and attempts to raise Illinois state law claims, without mention of the FTCA.  Because the FTCA is Plaintiff's only vehicle by which he can bring negligence claims against the defendants, this Court will construe the Complaint as if Plaintiff intended to bring his negligence claims under the FTCA, though he has not successfully stated a claim under this framework.

---

[1] FCI Greenville, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/gre/index.jsp.

First, "[t]he only proper defendant in an FTCA action is the United States." *Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008); *Hughes v. United States*, 701 F.2d 56, 58 (7th Cir. 1982). *See* 28 U.S.C. § 2679(b). Plaintiff has not named the United States as a defendant in this action. Further, federal prisoners bringing suit against the United States under the FTCA for injuries they sustain while incarcerated must first present the claim to the federal agency responsible for the injury. *See Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003). Plaintiffs generally show exhaustion by filing with their complaint a copy of the "final denial of claim" letter indicating that agency review has been completed and the individual may seek relief in court. Plaintiff has provided no such document, nor has he alleged that his claims have been appropriately exhausted. Thus, any claims Plaintiff seeks to bring under Illinois negligence law, and/or the FTCA, fail to state a claim upon which relief can be granted. Count 4 will therefore be dismissed without prejudice.

## Pending Motions

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3) that is hereby **REFERRED** to United States Magistrate Judge Reona J. Daly for a decision.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **MATHIAS**, **GOODRICH** and **ROBINSON**.

**IT IS FURTHER ORDERED** that **COUNTS 2** and **4** shall be **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 3** shall be **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **JOHN DOE 1** and **JOHN DOE 2** shall be **DISMISSED** without prejudice from this action for failure to state a claim upon which relief may be granted.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on **MATHIAS**, **GOODRICH** and **ROBINSON**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants **MATHIAS**, **GOODRICH** and **ROBINSON** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[2] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint, and this Memorandum and Order.

It is **FURTHER ORDERED** that Plaintiff shall serve upon Defendants, or if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or counsel. Any paper received by a district judge or a magistrate

---

[2] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Reona J. Daly for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under an obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   July 26, 2017**

**s/STACI M. YANDLE**
**U.S. District Judge**
